UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



UNITED STATES OF AMERICA,

v.    Civil No. 2:19cr10

CARLOS GOMEZ-SALINAS,

Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion filed by Defendant Carlos Gomez-Salinas ("Defendant" or "Gomez-Salinas") to dismiss the indictment against him. ECF No. 12. For the reasons stated below, Defendant's Motion to Dismiss is **DENIED**.

### I. FACTUAL and PROCEDURAL HISTORY

The underlying facts of this case do not appear to be in dispute. Defendant Gomez-Salinas is a citizen of Mexico. Response, ECF No. 13 at 1. He first illegally entered the United States at some point prior to February 12, 2006. Id. On February 12, 2006, Defendant was arrested by Charlotte-Mecklenburg police for resisting a public officer.[1] Id. at 1, Ex. 1 (arrest record). On April 15, 2007, Defendant was again arrested by Charlotte-

---

[1] On August 3, 2007, Defendant was convicted in North Carolina state court and sentenced to three days in jail for the resisting a public officer charge. Id. at 1, Ex. 1.

1

Mecklenburg police for domestic assault. Id. at 1, Exs. 1, 2 (police report).[2]

Following these arrests, on April 26, 2007, Defendant was served in person with an Immigration and Naturalization Service ("INS") Notice to Appear ("Notice to Appear"). Motion to Dismiss, ECF No. 12, Ex. B. The Notice to Appear advises Defendant that removal proceedings under section 240 of the Immigration and Nationality Act were initiated against him, that he is ordered to appear at a hearing before an immigration judge, and stated that the date and time of the hearing would be set later. Id.

On July 31, 2007, attorney Jeannette Freeman filed a Notice of Appearance in Defendant's Removal Proceeding, with such Notice providing the Defendant's address in Marietta, Georgia. Response, Ex. 3. On that same date, the immigration court served a Notice of Hearing in Removal Proceeding, indicating the time, date, and place of the hearing, on the Defendant at the same Marietta address provided by his attorney. Id., Ex. 4. The hearing was scheduled for August 28, 2007. Id. On August 28, 2007, a second Notice of Hearing in Removal Proceedings was personally served on the Defendant indicating a new date for the removal hearing on September 27, 2007. Id., Ex. 5. On September 24, 2007, the immigration court served a third Notice of Hearing on Defendant's

---

[2] On July 16, 2008, Defendant was convicted of Felonious Restraint with regard to the domestic assault incident and was sentenced to 13 months in prison. Id. at 1, Ex. 1.

2

counsel rescheduling the hearing for October 23, 2007. Id., Ex. 6.

Thereafter, the removal hearing was again rescheduled for September 2, 2008. Id., Ex. 10.[3] Counsel sent a letter to Defendant dated July 21, 2008, which informed the Defendant of the time and place of his upcoming September 2 hearing with the immigration court. Id., Ex. 11. On August 5, 2008, Defendant's attorney in the removal proceedings filed a motion to withdraw representation. Id., Ex. 10. The attorney cited a breakdown of communications with Defendant. Id. The record does not indicate that the motion to withdraw was ever granted.

On August 27, 2008, the immigration court issued a fourth Notice of Hearing setting the hearing for November 18, 2008 at 8:30 a.m. at 180 Spring Street, Southwest, Suite 241, Atlanta, Georgia 30303. Id., Ex. 12. This Notice of Hearing was served on Defendant's counsel.

---

[3] The removal hearing appears to have been continued from October 23, 2007 to September 2, 2008 due to Defendant's ongoing state criminal proceedings. On September 27, 2007, another one of Defendant's immigration attorneys, Chandler Sharma, filed a motion to continue Defendant's removal hearing due to a scheduled criminal hearing in North Carolina state court. Id., Ex. 7. Subsequently, on April 20, 2008, Defendant was arrested on a separate charge for driving while intoxicated. Id., Ex. 8. An officer reported that the Defendant recklessly drove through an apartment complex parking lot and struck two vehicles. Id. Defendant was also arrested by immigration officers on the basis that he was present in the United States illegally, and served with an INS Notice of Rights and Request for Disposition. Id., Ex. 9. Defendant requested a hearing before the immigration court, and he signed and dated the form. Id.

On November 18, 2008, the hearing was held. Id., Ex. 13. Defendant was not present. Id. Immigration Judge Wayne K. Houser, Jr. ordered that the Defendant be removed to Mexico ("Removal Order"), noting in the Removal Order that "[a]t a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability." Id. On December 11, 2008, the Defendant was removed at the Hidalgo Point of Entry and an Immigration Agent witnessed his departure from the United States into Mexico. Id., Ex. 14.

Thereafter, the Defendant illegally re-entered the United States. Id., Ex. 15. Pursuant to a Decision to Reinstate the November 2008 Removal Order, the Defendant was removed for a second time to Mexico from the United States on May 10, 2012. Id., Exs. 15, 16. Subsequent to his second removal to Mexico, Defendant again illegally re-entered the United States. On December 24, 2018, the Defendant was arrested in Chesapeake, Virginia, and charged with public intoxication in violation of Va. Code § 18.2-157. Id., Ex. 17.

On January 10, 2019, Defendant was indicted for the instant offense: Reentry of a Previously Deported Alien, in violation of 8 U.S.C. § 1326(a). ECF No. 1. On January 29, 2019, Defendant filed the instant motion to dismiss. ECF No. 12. In the motion, Defendant argues that because the April 2007 INS Notice to Appear failed to include the date and time of Defendant's removal

4

proceeding, the immigration court lacked jurisdiction to order Defendant's removal. Defendant contends that the November 2008 Removal Order is invalid, and the current indictment must be dismissed because Defendant has not re-entered the United States subsequent to the entry of a valid order removing Defendant from the country. On February 12, 2019, the Government filed a response. ECF No. 13. Defendant has not filed a reply and the deadline to do so has passed; the motion is ripe for decision. The Court has reviewed the parties' submissions and concludes that a hearing is not necessary. Local Criminal Rule 47(J).

## II. DISCUSSION

### A. 8 U.S.C. § 1326(d)

Defendant seeks a collateral judicial review of his November 2008 Removal Order, arguing that the order was *ultra vires* because the immigration court lacked jurisdiction as the April 2007 Notice to Appear did not include a date and time for the hearing. An alien charged with illegal re-entry may, in a criminal proceeding under § 1326, wage such a collateral attack that challenges the validity of the underlying removal order only if the alien demonstrates:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Because section 1326(d) is conjunctive, a defendant must satisfy all three provisions before he may wage a collateral attack on the prior removal order. United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005).

Here, Defendant has failed to satisfy any of the three provisions. First, Defendant has failed to exhaust the administrative remedies available to seek relief from his removal order. An alien may appeal a removal order issued by an immigration judge to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.1. Where an alien, like the Defendant in this case, fails to appeal to the BIA, he fails to meet the exhaustion requirement of § 1326(d). See, e.g., United States v. Mejia, 671 F. App'x 161, 161 (4th Cir. 2016) ("Accordingly, we conclude that Ramirez, who did not appeal the removal order to the Board of Immigration Appeals, failed to exhaust available administrative remedies to challenge his removal order and is thus barred from collaterally attacking the order under 8 U.S.C. § 1326(d).").

Second, a defendant must demonstrate that the underlying removal proceedings deprived him of the opportunity for meaningful judicial review. For instance, the opportunity for judicial review is denied where the entirety of the removal proceedings occurred while a defendant was *in abstentia*, without the "means of obtaining legal counsel, of discovering the remedies available to him, or of filing an appeal or petition for habeas corpus in the twenty-five

days that passed between the issuance of the order of deportation and Defendant's removal[.]" United States v. Munoz-Giron, 943 F. Supp. 2d 613, 621-22 (E.D. Va. 2013). Here, Defendant was represented by counsel in the removal proceedings; he also does not claim that he could not have known of avenues for judicial review such as 8 U.S.C. § 1252(a)(2)(D), which permits judicial review of final orders of removal on limited grounds by the various Circuit Courts of Appeals.

Courts have excused defendants from demonstrating either of these two requirements—the failure to exhaust administrative remedies or to seek judicial review—and permitted a collateral attack, "where that failure is itself the product of a procedural flaw in the immigration proceeding." United States v. Moreno-Tapia, 848 F.3d 162, 169 (4th Cir. 2017). For instance, the Fourth Circuit affirmed the excusal of a defendant's failure to exhaust administrative remedies or seek judicial review where the defendant signed a waiver of these rights written in English but he "did not read or understand English to an extent sufficient to enable him to comprehend the [forms], or to make a knowing and informed decision on the basis of forms that he could not read." United States v. Lopez-Collazo, 824 F.3d 453, 459 (4th Cir. 2016) (quotations omitted). Here, the Defendant did not unknowingly sign a waiver of his rights to appeal to the BIA or an appellate court; he simply failed to make such an appeal. Defendant also

7

does not argue that he lacked necessary language skills or failed to comprehend his rights.

Nor is this a case where the defendant received a Notice to Appear without a date and time for the hearing, and the defendant never received any further correspondence regarding the hearing. For example, in El Shami, the Fourth Circuit reasoned that defendant could not be expected to meet the exhaustion and judicial review requirements because, without further notifications, that defendant could not have been informed of his rights to appeal to the BIA or judiciary. 434 F.3d at 664. Here, although the initial Notice to Appear did not contain the date and time for the hearing, Defendant does not argue that he did not have actual notice of the hearing. As the hearing was rescheduled, Defendant received four additional notices with the date and time of the hearing. Such amended notices are expressly permitted by statute. 8 U.S.C. § 1229(a)(2)(A) ("[I]n the case of any change or postponement in the time and place of such proceedings, subject to subparagraph (B) a written notice shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)[.]"). Nothing indicates that these subsequent notices with the date and time were defective. Most importantly, the final notification indicating that the hearing was on November 18, 2008 was sent to Defendant's attorney in the underlying removal proceeding. Such

notice delivered only to the attorney is permitted by statute and regulation. See id. ("a written notice shall be given in person to the alien . . . *or to the alien's counsel of record*") (emphasis added); see also 8 C.F.R. §§ 292.5, 1292.5 ("Whenever a person is required by any of the provisions of this chapter to give or be given notice . . . such notice . . . shall be given by or to, served by or upon, made by, or requested of *the attorney or representative of record*, or the person himself if unrepresented.") (emphasis added).

Third, Defendant cannot demonstrate that the entry of the deportation order was fundamentally unfair. "To demonstrate fundamental unfairness, a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." El Shami, 434 F.3d at 664-65 (quotations omitted). Unlike in El Shami, the Defendant here received written notice of his deportation hearing. Therefore, he was not deprived of the fundamental right to due process, which "requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." United States v. Torres, 383 F.3d 92 (3rd Cir. 2004). Here, Defendant knew of the charges against him, was afforded a hearing, and an opportunity to be heard

at that hearing, because through counsel, he received adequate notice of the date and time of the hearing.

Further, Defendant cannot demonstrate that the deficiencies in the deportation proceedings caused him actual prejudice. That is, he cannot demonstrate that "but for the errors complained of, there was a reasonable probability that he would not have been deported." El Shami, 434 F.3d at 665. In this instance, there is no dispute that the Defendant was removable. The Removal Order, in fact, notes that "[a]t a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability." Response, ECF No. 13, Ex. 13. Defendant has not shown any reason the immigration judge would not have ordered him removed.

Finally, Defendant appears to argue that he may wage a collateral attack on the Removal Order because a review must "be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987). Not so. The Supreme Court in Mendoza-Lopez only recognized a limited due process right by an alien charged with illegal re-entry in violation of 8 U.S.C. § 1326 to meaningful judicial review of the underlying removal proceeding "where the defects in an administrative proceeding foreclose judicial review of that proceeding." 481 U.S. at 838-839 ("*Depriving an alien of*

*the right to have the disposition in a deportation hearing reviewed in a judicial forum requires*, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.") (emphasis added). Thus, in 1996 when Congress amended the illegal reentry statute, the limited right recognized by Mendoza-Lopez was codified in 8 U.S.C. § 1326(d)(2). United States v. Cisneros-Garcia, 159 F. App'x 464, 467 (4th Cir. 2005) ("Congress codified the protections mandated by Mendoza-Lopez in 8 U.S.C. § 1326(d)."); accord United States v. Sanchez-Peralta, No. 97 CR. 536, 1998 WL 63405, at *2 (S.D.N.Y. Feb. 13, 1998) ("Section 1326(d) appears, at least in part, to codify the constitutional standards governing collateral attacks established in United States v. Mendoza-Lopez[.]"). As already discussed above, Defendant has failed to demonstrate that he was deprived of the right to judicial review in the removal hearing.

Because Defendant has failed to satisfy any of the provisions of 8 U.S.C. § 1326(d), the Court finds that he may not collaterally attack the validity of the November 2008 Removal Order.

### B. Notice to Appear

In any event, Defendant's argument, that the Removal Order was *ultra vires* as the immigration judge did not have jurisdiction because the Notice to Appear did not include a date or time for the hearing, fails on the merits.

The statute governing removal proceedings is silent as to the jurisdiction of the immigration court. See generally 8 U.S.C. § 1229. However, regulation provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). A charging document is "the written instrument which initiates a proceeding before an Immigration Judge" including a Notice to Appear. 8 C.F.R. § 1003.13. Both the statute and the regulation list requirements for the contents of a Notice to Appear. The regulation requires a Notice to Appear to include specified information, such as "[t]he nature of the proceedings," "[t]he acts or conduct alleged to be in violation of law," and "[n]otice that the alien may be represented, at no cost to the government, by counsel or other representative." 8 C.F.R. § 1003.15(b). The regulation does not mandate that the time and date of proceedings appear in the initial notice; the time and date only need to be included "where practicable." 8 C.F.R. § 1003.18(b). If "that information is not contained in the Notice to Appear," the regulation permits "scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing" subsequently. Id. The statute contains largely the same requirements as the regulation, except it demands inclusion of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i).

12

Defendant relies on the Supreme Court's recent decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018). In Pereira, the alien was served with a Notice to Appear containing all of the information required by § 1229(a)(1), except the date and time of the removal hearing. 138 S. Ct. at 2112; see 8 U.S.C. § 1229(a)(1)(A)-(F). The alien in Pereira never received a supplemental notice supplying the missing information. Id. The question in Pereira was whether the incomplete notice, without more, constituted a "Notice to Appear" under 8 U.S.C. § 1229(a)(1) for purposes of triggering the "stop-time rule" in § 1229b(d)(1)(A).[4] The Supreme Court held that without providing the date and time of the hearing, the stop-time rule is not triggered. Id. at 2115-16.

A handful of district courts have relied on Pereira to find that a Notice to Appear without the date and time of the hearing deprives the immigration court of jurisdiction, and renders the removal order defective. See, e.g., United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); United States v. Vargas-Osorio, 2018 WL 6201957 (W.D. Tex. Nov. 28, 2018); United States v. Erazo-Diaz, 2018 WL 6322168 (D. Ariz. Dec. 4, 2018), United States v. Pedroza-Rocha, 2018 WL 6629649 (W.D. Tex. Sept.

---

[4] Section 1229b gives the Attorney General the power to cancel the removal of aliens if certain provisions like continuous residency or continuous physical presence in the United States requirements are met; the stop-time rule states that the continuous residency and continuous physical presence period ends when a Notice to Appear under section 1229(a) issues.

13

21, 2018). However, far more district courts, including this Court, have held that Pereira addressed a narrow question, and its holding should not be extended beyond the stop-time rule provision to find that immigration courts lack jurisdiction where the Notice to Appear did not include the date and time. See, e.g., United States v. Romero-Caceres, No. 1:18-CR-354, 2018 WL 6059381, at *8 (E.D. Va. Nov. 19, 2018); see also Response at n.12 (collecting cases).[5]

Critically, all Courts of Appeals that have addressed the issue, including the Fourth Circuit,[6] have unanimously found that Pereira does not dictate that a removal order is *ultra vires* where the order is based on an initial Notice to Appear without the date and time. See, e.g., Leonard v. Whitaker, 746 F. App'x 269, 269 (4th Cir. 2018) ("[Petitioner] also contends that the agency did not have jurisdiction over his removal proceedings. We conclude that the narrow holding of Pereira does not apply in this situation.") (per curiam); Karingithi v. Whitaker, 913 F.3d 1158, 1159-60 (9th Cir. 2019) ("Pereira was not in any way concerned with the Immigration Court's jurisdiction").[7] These courts reason

---

[5] Another comprehensive survey also found far more district court cases rejecting than supporting the extension of Pereira to an immigration court's jurisdiction. United States v. Lozano, No. 4:18-CR-522, 2019 WL 224178, at *10 (S.D. Tex. Jan. 15, 2019).

[6] The Court notes that the Fourth Circuit has only addressed the issue in unpublished per curiam opinions, which are not binding precedent.

[7] Notably, the Ninth Circuit's recent ruling abrogates two cases cited by Defendant: Virgen-Ponce and Erazo-Diaz.

14

that although the statute requires a Notice to Appear to include the date and time, it is silent on when jurisdiction vests in the immigration court as noted above. Therefore, failure to comply with the requirements of the statute does not affect jurisdiction. (In contrast, the stop-time rule in Pereira is statutory. Thus, failure to comply with the statutory requirements for a Notice to Appear means the stop-time rule is not triggered). Only the regulation provides that jurisdiction vests when a Notice to Appear is issued, but the regulation does not require the initial Notice to Appear include the date and time. Karingithi, 913 F.3d at 1160 ("The flaw in this logic is that the regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction. And for their part, the regulations make no reference to § 1229(a)'s definition of a 'notice to appear.'"); United States v. Perez-Arellano, No. 18-4301, 2018 WL 6617703, at *3 (4th Cir. Dec. 17, 2018) ("Pereira did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the 2004 removal proceeding.") (per curiam). The regulation permits the immigration court to provide the date and time later during removal proceedings. Thus, jurisdiction vests in the immigration court once a subsequent notice with the date and time is sent. Molina-Guillen v. U.S. Attorney Gen., No. 18-10914, 2019 WL 669715, at *4

(11th Cir. Feb. 19, 2019) ("[T]he March 2006 Notice of Hearing, which contained the date and time of the removal hearing, was served on Molina-Guillen at her then-current address in Tifton, Georgia . . . Together, the December 2005 Notice to Appear and the March 2006 Notice of Hearing fulfilled the notice requirements in § 1229(a)(1). Thus, the IJ was authorized to enter the removal order in Molina-Guillen's absence when she failed to appear at the hearing[.]"); Hernandez-Perez v. Whitaker, 911 F.3d 305, 315 (6th Cir. 2018) ("[J]urisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing . . . is provided in a Notice of Hearing issued after the [Notice to Appear].").

The BIA has recently issued an opinion also rejecting the extension of Pereira. In Matter of Bermudez-Cota, the Board found that a Notice to Appear "that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of [8 U.S.C. § 1229(a)], so long as a notice of hearing specifying this information is later sent to the alien." 27 I. & N. Dec. 441, 447 (B.I.A. 2018).[8] And both the BIA and

---

[8] Courts have not agreed on the appropriate amount of deference to give the BIA's opinion. Courts "generally give Chevron deference to the BIA's statutory interpretations, recognizing that Congress conferred on the BIA decisionmaking power to decide such questions of law." Martinez v. Holder, 740 F.3d 902, 909 (4th Cir. 2014), as amended (Jan. 27, 2014); see, e.g., Romero-Caceres, 2018 WL 6059381, at *8 ("Notably, the BIA's decision in Bermudez-Cota is entitled to Chevron deference."). The Sixth Circuit applied a lower deference standard.

16

courts have noted that, in Pereira, the Supreme Court "did not purport to invalidate the alien's underlying removal proceedings or suggest that proceedings should be terminated," although the Supreme Court could have, which further suggests that failure to comply with § 1229(a)'s date and time requirement is non-jurisdictional. Hernandez-Perez, 911 F.3d at 314 (citing Bermudez-Cota, 27 I. & N. Dec. at 443 ("Had the Court intended to issue a holding as expansive as the one advanced . . . presumably it would not have specifically referred to the question before it as being 'narrow.'")).

In this case, the April 2007 Notice to Appear did not include the date and time of the hearing. However, the Defendant and his counsel in the removal proceedings were sent a subsequent notice on July 31, 2007, which indicated the hearing would take place on August 28, 2007 at 8:30 a.m. See Response, Ex. 4. Jurisdiction vested in the immigration court at that point. Molina-Guillen, 2019 WL 669715, at *4; Hernandez-Perez, 911 F.3d at 315. Although the hearing was subsequently rescheduled, that does not divest the immigration court of jurisdiction, especially as the subsequent notices were not defective in any way and complied with the relevant statute and regulation (including the final notice

---

See, e.g., Hernandez-Perez, 911 F.3d at 312 (applying Auer deference). In light of the clear consensus among Courts of Appeals including the Fourth Circuit rejecting Defendant's argument on the face of the statute and regulation, it is not necessary to address the issue of deference.

17

indicating that Defendant's hearing was on November 18, 2008). Supra at 8-9.[9]

Because 1) the relevant statute is silent on when jurisdiction vests in an immigration court, 2) Defendant received notice of the date and time of the hearing in accordance with the relevant regulation, which does address when jurisdiction vests, and 3) the Supreme Court's holding in Pereira does not apply, the Court finds that the April 2007 Removal Order was not *ultra vires* as the immigration court had jurisdiction.

### III. CONCLUSION

Because, as discussed above, Defendant may not collaterally attack the removal proceedings, and because his argument fails on the merits, Defendant's Motion to Dismiss the Indictment is **DENIED**. ECF No. 12. The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ 
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 12, 2019

---

[9] Because it is not necessary to do so, the Court does not further discuss the possibility that the removal order is not defective even if no subsequent notice providing the date and time is provided. United States v. Rivera Lopez, No. 1:18-CR-00381, 2018 WL 6834363, at *6 (E.D. Va. Dec. 28, 2018) (finding that although the regulations provide that jurisdiction vests when a charging document is filed with the Immigration Court, the term "jurisdiction" does not refer to subject matter jurisdiction and the immigration court's power to hear a case, which can never be forfeited or waived, but rather a mandatory component of the adjudicative process that may nonetheless be forfeited or waived; as such, failure to comply with the regulation does not render a removal order *ultra vires*).